Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue
7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

YESH MUSIC, LLC, and JOHN K. EMANUELLE,     Index No.: 15-cv-6510
individually,

                           **COMPLAINT AND JURY DEMAND**
                Plaintiffs,          **FOR DAMAGES FOR COPYRIGHT**
                           **INFRINGEMENT**

         v.

MICROSOFT CORP.,

                Defendant.
-----------------------------------------------------------------x

       Plaintiffs YESH MUSIC, LLC and JOHN EMANELE by and through their attorneys at

GARBARINI FITZGERALD P.C., bring this Complaint and Jury Demand against Defendant

MICROSOFT CORP. based on copyright infringement pursuant to the Copyright Act and

Copyright Revisions Act, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act" or "Act").

### NATURE OF THE ACTION

       1.      Defendant MICROSOFT operates a subscription interactive internet streaming

service called X-Box Music which is subject to § 115 of Title 17 of the United States Code.

MICROSOFT was required to serve a Notice of Intent to Obtain Compulsory License ("NOI"),

in the form proscribed by 37 CFR § 201.18, within thirty (30) days from the date each

Copyrighted Composition was included on your service.

2.      From at least February 2010, Plaintiffs' 118 Copyrighted Compositions have been available for interactive streaming on Defendant's service.  Plaintiffs did not, however, receive NOIs granting a license for this use.

3.      The failure to serve timely NOIs renders the distribution of the Copyrighted Compositions unlicensed and thereby violates my Plaintiffs' exclusive rights pursuant to 17 U.S.C. §§ 106 and 114.

4.      MICROSOFT was contacted by correspondence from counsel dated June 20, 2015, but elected to ignore Plaintiffs' counsel and continue to stream the Copyrighted Compositions.

5.      Defendant is afforded tremendous rights under Section 115 of the Copyright Act. Defendant can compel Plaintiffs to give them a "mechanical" license for the publishing rights, and charge a ridiculously low per stream rate for the "mechanical" or publishing royalties.  In return, Defendant is obligated to strictly adhere to the statutory notice provisions of Section 115; which Defendant has elected to ignore.

6.      As a result, Defendant lost its right to serve compulsory licenses for Plaintiffs' Copyrighted Compositions.  Further, Defendant's failure to comply with Section 115 was done as a matter of cost-cutting business practice, and only an award at the higher end of the statutory framework will serve to curtail Defendant's predatory behavior as detailed below.

**PARTIES**

7.      Plaintiff Yesh Music, LLC is a limited liability company organized under the laws of the State of New York, with its principal offices located at 75-10 197th Street, Flushing, New York.  YESH is engaged in, among other things, the business of music publishing and otherwise commercially exploiting its copyrighted sound recordings of the band *The American Dollar*.  The

sole members of Plaintiff are Richard Cupolo and John Emanuele, who are also the sole composers of the Copyrighted Compositions.

8.      Plaintiff John K. Emanuele is an individual and resident of Queens.  EMANUELE released two collections of songs under the name "Zero Bedroom Apartment", which Defendant elected to make available to the public without service of an NOI or payment of royalties.

9.      Plaintiffs are informed and believe, and on that basis aver, that Defendant Microsoft Inc. ("MICROSOFT") is a Washington corporation with its principal place of business located in Redmond, Washington and an office in this Judicial District located at 11 Times Square, New York, NY.  Microsoft develops, markets, distributes and licenses computer software as well as owns and operates XBOX Music, an interactive music streaming service.

## JURISDICTION AND VENUE

10.      The jurisdiction of this Court is based upon 28 U.S.C. § 1331 in that this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.).

11.      Plaintiffs have the right to bring the within action pursuant to 17 U.S.C. § 501(b).

12.      Personal jurisdiction over Defendant MICROSOFT is proper in this Court, among other reasons, on the grounds that MICROSOFT maintains a headquarters at 11 Times Square, New York, NY, and through its interactive web-based subscription service which caused the unlicensed distribution of the Copyrighted Compositions throughout the State of New York, including within this Judicial District.  Other wrongful conduct alleged herein, occurred, in part, in the State of New York and in this Judicial District.

13.     The Court has personal jurisdiction over Defendant MICROSOFT pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c).

15.     Copies of each certificate issued by the U.S. Copyright Office and assignments registered with the U.S. Copyright Office are annexed and incorporated hereto respectively as **Exhibits A** and **B.**

16.     Each of Copyrighted Compositions was registered within three months of publication, and satisfies the registration prerequisite under 17 U.S.C. 412(c).

## FACTS APPLICABLE TO BOTH PLAINTIFFS

17.     As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted work.

18.     Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the work by another constitutes copyright infringement.

19.     When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical works by enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

20.     Although recording technology has changed since 1909, licenses to record musical compositions on such media continue to be called "mechanical licenses."

21.     The compulsory mechanical license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits one wishing to record a copyrighted nondramatic musical work to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty.  But the availability of compulsory mechanical licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires in pertinent part that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the work, serve notice of intention to do so on the copyright owner."

22.     Under Section 115, the consequences of any lapse are severe: "failure to serve or file the notice required by clause (1) forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement ..."

23.     The failure to serve the notice of intention before the start of distribution precludes the creation of a compulsory license, and it does so both as to copies distributed prior to service and as to copies distributed thereafter.

24.     The tremendous power granted to Defendant under Section 115 is balanced by the strict obligations regarding notice.  Defendant intentionally failed to adhere to its Section 115 obligations, while enjoying all of the benefits afforded by Section 115.

## MICROSOFT'S X-BOX MUSIC SERVICE

25.     With the launch of Windows 8 in 2012, Microsoft launched its X-Box Music service.  Microsoft calls it an all-in-one music service because you can get free streaming music, subscribe to listen to everything or pay to download specific tracks you want to keep.

5

26.     Microsoft bundles its music service with its new operating system and its X-Box 1 home entertainment system.  Defendant artificially inflated the size of its music library by dumping all independent music into its music library, but not paying any of the costs associated with Section 115 compliance.

27.     MICROSFT currently claims 38 million songs in its library which would make it larger than the most popular interactive streaming service in the world – Spotify.

## FACTS APPLICABLE TO YESH

28.     YESH consists of two men who have been professional musicians since they were 16 years old.  In fact, at 16 years old, John Emanuele and Rich Cupolo played at CBGB and recorded and released two EPs.  While attending Townsend Harris High School in Queens, Emanuele and Cupolo won the Bertlesmann Songwriting contest.  Since they were 25 years old, Emanuel and Cupolo, now thirty, have exclusively earned their living from exploiting their Copyrighted Compositions.

29.     Digital downloads represent 50% of the money generated from the Copyrighted Compositions.  The other 50% comes from licensing for varied uses including motion pictures, commercials, and video games.  Examples of some of the licensed uses are as follows:

| Motion Pictures | Production Company |
| --- | --- |
| Extremely Loud & Incredibly Close | Warner Brothers |
| Up In The Air | Paramount Pictures |
| Coast Modern | Two Fold Film |
| Damnation | Felt Soul Media |
| Eastern Rises | Felt Soul Media |
| Officer Down | Felt Soul Media |

| | |
|---|---|
| Yami no Ichi Nichi | Mario Junn |
| Nuclear Family | Ian Hawkins |

| Television Program | Production Company |
|---|---|
| CSI: Miami | CBS/Paramount |
| Spring Watch | Fox Television |
| Nike Battlegrounds | MTV/Viacom |
| Real World/Road Rules | Bunim Murray/MTV |
| Red Band Society | Fox Television |
| Hawthorne | TNT Networks |
| Human Planet | Discovery Network |
| Outside Today | Outside TV |
| Mrs. Eastwood & Co | Bunim Murray/MTV |
| Teen Mom | MTV/Viacom |
| Sixteen and Pregnant | MTV/Viacom |
| Keeping Up With The Kardashians | Bunim Murray/E Television |
| Alaska: The Last Frontier | Discovery Networks |
| The Vineyard | ABC Family |
| Gott und die Welt | German TV ARD |
| America's Psychic Challenge | Bunim Murray Productions |
| Caged | MTV/Viacom |
| True Life | MTV/Viacom |
| This Is How I Made It | MTV/Viacom |
| TO Show | VH1/Viacom |
| Styl'd | MTV/Viacom |
| Life of Ryan | MTV/Viacom |
| If You Really Knew Me | MTV/Viacom |

| Taboo Nation | National Geographic |
|---|---|
| Shahs of Sunset | Ryan Seacrest Productions |
| How I Rock It | Ryan Seacrest Productions |
| Popland | MTV/Viacom |

| Commercials | Company |
|---|---|
| Infiniti Automobile | Infiniti Automobiles |
| Samsung Smart TV | Samsung |
| GoPro Camera | GoPro Cameras |
| Elle Magazine UK \| Dubai Teaser | Elle Magazine UK |
| Pre-Auction Statement | Leonardo DiCaprio Foundation |
| Subaru Online Advertisement | Subaru (Switzerland) |
| Burton Snowboard | Burton Snowboards |
| O'Neill Europe Advertisements | O'Neill Europe |
| Dove | Dove |
| DC Shoes | DC Shoes |
| Converse Web | Converse |
| NBA Playoffs Commercial | ESPN |
| CanonOptics Advertisement | CanonOptics / Burton |
| Telluride Tourism Board | Telluride Tourism Board |
| Unit Clothing | Unit Clothing Enter. |
| Viasat Baltics | Viasat Baltics |
| Morgan Stanley | Morgan Stanley/Chief Ent. |

| Video Game | Company |
|---|---|
| The Amazing Spiderman | Activision |

30.     MICROSOFT intentionally infringed YESH's one hundred and sixteen (116) Copyrighted Compositions, by, among other things, making the Copyrighted Compositions available for unlawful and unauthorized digital download and distribution to the public through its interactive Internet subscription music service found at <www.xbox.com>.  XBOX Music is

8

also bundled with every MICROSOFT operating system since 2012, and on Defendant's XBOX 1 entertainment system (the "MICROSOFT Service"), without a license under 17 U.S.C. § 115.

31.     The MICROSOFT Service allows the user to pick which song the user wants to hear, and is therefore an interactive service pursuant to 17 U.S.C. § 114(j)(7) of the Copyright Act.  As such, MICROSOFT was obligated to obtain licenses for both the sound recordings ("Master Recording License") and compositions ("Mechanical License") for every song it offers on its service.

32.     The license for the physical sound recordings here -- Master Recording License -- was granted to MICROSOFT through TuneCore.  TuneCore functions like a music label, allowing artists to submit the master recordings through TuneCore to various "Digital Stores" for review.

33.     At no time did TuneCore hold itself out as conveying a mechanical license for the compositions submitted on behalf of Plaintiff.  Further, it is axiomatic that a mechanical license to record and distribute the songs must be obtained in order to lawfully make the recordings available for temporary stream or permanent download.

34.     In February 2012, Plaintiff made the following collections available on the MICROSFT Service: *The American Dollar* containing 10 sound recordings, *The Technicolour Sleep* containing 12 sound recordings, *A Memory Stream* containing 11 recordings, *Ambient One* containing 16 recordings, and *Atlas* containing 13 recordings.

35.     MICROSOFT made all of the recordings available immediately on its system.

36.     MICROSOFT did not serve an NOI for any of the forgoing recordings.  Instead it dumped the recordings into its service, with complete disregard for the rights of Plaintiffs.

37.     YESH also made the following collections of songs available to Defendant; (i) *Ambient Two* released on June 2, 2010 containing 14 tracks; (ii) *Live in Brooklyn* released on August 15, 2010 containing 8 tracks; (iii) *The Best of the American Dollar* released on January 1, 2011 containing 14 tracks; (iv) *Awake in the City* released on March 24, 2012 contained 12 tracks, (v) *Ambient Three* released on September 15, 2012 containing 17 tracks, (vi) *From The Inland Sea* released on November 29, 2012 containing 3 songs, (vii) *Best of The American Dollar (Volume Two - Ambient)* released on December 20, 2012 containing 12 songs, (viii) *Music For Sleep* on December 12, 2013 containing 10 songs, (ix) *Music For Focus and Creativity* on December 10, 2013 containing 50 songs, and (x) the *Five Album Set and Bonus EP*'s on May 5, 2014 containing 72 songs.

38.     Defendant immediately made all of the forgoing recordings available on its system after receipt.

39.     Plaintiff YESH does not have "albums" of songs in the traditional sense, but releases collections of individual songs which are not an integrated work.  For that reason, numerous musical compositions appear in two or three of the collections.

**THE NOIs**

40.     Defendant served an NOI for two songs "The Slow Wait" and "Bump" on January 19, 2011 for distribution on February 1, 2011.

41.     On January 19, 2011, MICROSOFT had ninety eight (98) recordings on its system, and those recordings were made available to the public by Defendant a year earlier.  The two recordings covered by the NOI had been available on Defendant's system for one year.

42.     The January 19, 2011 NOI was invalid because it was not served within thirty (30) days of the two recordings being made available.

43.     Defendant served an NOI for one song "Slow Wait" on April 26, 2011 for distribution on May 9, 2011.

44.     On April 26, 2011, MICROSOFT had ninety eight (98) recordings on its system, and those recordings were made available to the public by Defendant a year earlier and the recording covered by the NOI had been available on Defendant's system for one year.

45.     The April 26, 2011 NOI was invalid because it was not served within thirty (30) days of the recording being made available.

46.     Defendant served an NOI for sixty songs on April 8, 2013 for distribution on April 19, 2013.

47.     The April 8, 2013 NOI misrepresented the "expected date of distribution" because the vast majority of the recordings had been on Defendant's system and available to the public for over two years.

48.     On April 8, 2013, MICROSOFT had one hundred and forty two (142) recordings on its system.

49.     The April 8, 2013 NOI was invalid because it was not served within thirty (30) days of the two recordings being made available.  In fact, it was served years after the recordings were made available.

50.     Defendant served additional NOIs as follows: (i) for one song "Par Avion" on July 16, 2013 for distribution on July 29, 2013; (ii) for one song ""We're Hitting Everything" on August 22, 2013 for distribution on September 3, 2013; (iii) for fifty nine songs on January 23, 2014 for distribution February 03, 2014; (iv) for one song "Twilight Drive" on February 14, 2014 for distribution February 14, 2014; (v) for four songs on August 14, 2014 for distribution on August 14, 2014; (vi) for one song ""Signaling Through the Flames" on August 22, 2014 for

distribution on September 3, 3014; and (vii) for three songs "Chase", "Intro", and "Time (Film Edit)" on October 30, 2015 for distribution on October 30, 2015.

51.     Each of the NOIs was served years after the recordings were made available to the public.

52.     The NOIs from MICROSOFT are also facially invalid because MICROSOFT misrepresented the expected distribution date for each recording.

53.     All of the NOIs were for "the calendar year" and have expired.

54.     As of the date of this Complaint, there is NOI covering any of the Copyrighted Compositions on the MICROSOFT System.

55.     On or about June 20, 2015, MICROSOFT was contacted by correspondence from Plaintiffs' counsel, and notified that YESH had not received valid NOIs for any of the musical compositions being streamed on the MICROSOFT Service; MICROSOFT did not respond.

56.     In the four months after Defendant was put on notice by counsel, MICROSOFT continued to stream YESH's one hundred and sixteen (116) Copyrighted Compositions.  This is the definition of "intentional" under 17 U.S.C. § 504(c)(2).  Defendant, acted willfully and wantonly, or at least with reckless disregard to YESH's rights.

57.     Defendant is liable for infringement of YESH's exclusive rights to the Copyrighted Compositions as provided by clauses (1) and (3) of section 106 of the Copyright Act.

58.     Upon information and belief, Defendant made a business decision that it was more cost effective to infringe the copyrights of independent musicians than spend the time and money contacting every rights owner.

## FACTS APPLICABLE TO PLAINTIFF JOHN K. EMANUELE

59.     Plaintiff EMANUELE released two collections of music, via TuneCore, for his solo project called "Zero Bedroom Hotel".  The first collection, titled *Filmmuzic*, had 19 tracks and was made available by Defendant on or about February 5, 2011.  The second collection, titled *Complete Discography 2009-2013*, was made available by Defendant on or about April 9, 2013, and contained 90 songs. The 109 songs are covered by two copyright registrations attached as part of **Exhibit B**.

60.     On or about November 9, 2015, EMANUELE received an NOI from Music Reports on behalf of MICROSOFT for some of the "Zero Bedroom Apartment" tracks on the XBOX Music service. The tracks identified in the NOI were, however, on Defendant's service for over a year at the time the first NOI was served.

61.     Defendant cannot be heard to argue that it has infringed both Registered Copyrights of John K. Emanuele.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

62.     Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length here.

63.     Defendant has, without a "mechanical" license under Section 115 from Plaintiffs, reproduced and publicly performed and/or publicly distributed Plaintiffs' Copyrighted Compositions through its interactive web-based subscription streaming service.

64.     It cannot be disputed that the Plaintiffs have valid, registered copyrights, and that Defendant has reproduced and offered the Copyrighted Compositions for streaming, including permanent and temporary digital download, without a license, thus infringing Plaintiffs' rights under Section 115 of the Copyright Act.  Irreparable injury is presumed here as Plaintiffs have established a prima facie case of copyright infringement.

65.     Even after Defendant was put on notice, over four months ago, that it had no license or authority, Defendant elected to continue to reproduce and publicly perform and/or publicly distribute YESH's Copyrighted Compositions through its subscription service.

66.     The making or the distribution, or both, of all Copyrighted Compositions without the payment of royalties is actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

67.     Each time the Plaintiffs were deprived of their statutory royalty entitlement, e.g., by non-payment of royalties, a distinct harm was done to Plaintiffs' property interest.

68.     MICROSOFT's continued streaming of Plaintiff's Copyrighted Compositions, after it was served with notice on June 20, 2015, is clearly an intentional infringement under the Act.

69.     Defendant's predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages.  Defendant knew that its actions constituted an infringement each time it failed to serve an NOI or make a royalty payment.

70.     Defendant's knowledge may also be inferred from its conduct including the reckless disregard of the Plaintiffs' right (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

71.     As a direct and proximate result of each of the Defendant's infringement, Plaintiffs have incurred damages, as described more fully above.  Pursuant to 37 C.F.R. § 385, Plaintiffs are entitled to a "per stream" statutory royalty rate of $.01 for interactive web-based streaming services like Defendant.

72.     Plaintiffs may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than $30,000, for each infringement of each copyright registration identified in **Exhibit A**, as available under the law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A.     Plaintiffs demands statutory damages in the amount of $150,000 per infringement for each Copyright Registration identified in the annexed **Exhibit A**, but in no case less than $30,000 with respect to each infringement, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

B.      for Plaintiffs' actual damage if Plaintiffs so elect;

C.     attorneys' fees costs and disbursements in this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and,

D.     for such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.


Dated: November 12, 2015                                        GARBARINI  FITZGERALD P.C.

                                                                By: _____
                                                                Richard M. Garbarini
                                                                Richard M. Garbarini (RG 5496)
                                                                250 Park Avenue
                                                                7th Floor
                                                                New York, New York 10177
                                                                Telephone: (212) 300-5358
                                                                Facsimile: (347) 218-9479